**HERITAGE POOLS, INC., a Colorado corporation, Plaintiff-Appellant,**

v.

**FOOTHILLS METROPOLITAN RECREATION AND PARK DISTRICT, a Colorado recreation district of the County of Jefferson, State of Colorado, and the Board of Directors of Foothills Metropolitan Recreation and Park District, Defendants-Appellees.**

No. 84CA0259.

Colorado Court of Appeals, Div. I.

May 9, 1985.

---

Bruce McMillen, Englewood, for plaintiff-appellant.

Lutz and Oliver, Harold D. Lutz, Arvada, for defendants-appellees.

SMITH, Judge.

Plaintiff, Heritage Pools, Inc. (Heritage), a swimming pool construction company brought suit against various defendants,

including Foothills Metropolitan Recreation and Park District (District) for breach of contract. Based on a stipulation of undisputed facts and exhibits, the trial court entered judgment in favor of the District. Heritage appeals. We affirm.

The operative facts are as follows. Invitations to bid for the construction of a new swimming pool and remodeling of the recreation center were published by the District. The bid specifications required that general contractors submitting bids specify who the swimming pool subcontractor would be. The bid invitation specified that such subcontractor be selected from a list published by the District of "prequalified" subcontractors. The list included the names of four swimming pool subcontractors including Heritage and Paddock Pools. The bidding rules provided that no bid could be modified after the bids had been opened and that the District reserved the right to reject any and all bids.

When the bids were opened, it was discovered that each of the general contractors submitting bids had designated Heritage as its choice for swimming pool subcontractor. However, it was impossible to determine, on the face of the bids, who was the low bidder since the bids submitted contained different time constraints which would affect the overall cost of the project.

Before awarding the general contract, the project architect and the District discussed the specification variables contained in the general contractors' bids and the subcontractors' bids. The architect advised the district that he would feel more confident working with a subcontractor who had more experience with stainless steel gutter pools than did Heritage. He, therefore, suggested that another subcontractor with more experience using the specific materials should be the designated subcontractor. Based on this discussion, the District contacted the four lowest general contract bidders and spoke with each individually as to whether they would be able to work with the other subcontractors instead of Heri-

tage if the District so chose. Each of the general contractors agreed that they would.

The District thereafter awarded the general contract to HBN Construction Company (HBN) and designated Paddock Pools, which had extensive experience with stainless steel gutter pools and had submitted the next lowest subcontract price, as the swimming pool subcontractor. As a result of this change in subcontractors, an additional $4,630 was added to the contract cost of the project.

I.

Heritage contends that it is entitled to third-party beneficiary status under the contract between HBN and the District because it was a prequalified bidding subcontractor and because all seven general contractors had originally designated Heritage as their swimming pool subcontractor. We disagree.

Here, the District's requirement that a swimming pool subcontractor be designated from a list of prequalified subcontractors does not constitute a promise on the part of the District that it would approve the use of the named subcontractor. This requirement was only one of the specifications included in the District's invitation for bids. As mere offers, the bids do not, in and of themselves, impose any contractual obligations on the District or any party submitting bids until, and unless, accepted by the District. See *Rapp v. Salt Lake City*, 527 P.2d 651 (Utah 1974); *Southern California Acoustics Co. v. C.V. Holder, Inc.*, 71 Cal.2d 719, 79 Cal.Rptr. 319, 456 P.2d 975 (1969); *Mottner v. Town of Mercer Island*, 75 Wash.2d 575, 452 P.2d 750 (1969).

The formal contract resulted when the District accepted HBN's bid and the modifications as to price and the designated subcontractor were agreed upon. Heritage was not named in the contract,

nor can the contract be read to imply that Heritage was an intended beneficiary thereof. At most, Heritage was only an incidental party to the original bid or offer and cannot therefore recover as a third-party beneficiary to the ultimate contract. *See Southern California Acoustics, Co., v. C.V. Holder, Inc., supra.*

■ In the absence of an agreement otherwise, we hold that the mere listing of a subcontractor in the prime bid pursuant to the District's bidding rules and instructions did not constitute an independent bid to the District by the subcontractor. Therefore, acceptance of the general contractor's bid did not create a contract between the District and the subcontractor, nor did it confer on the subcontractor third-party beneficiary status.

## II.

Heritage also contends that since the bidding rules and instructions prohibited bid modification after bid opening, the District's action in replacing Heritage with another subcontractor and adding $4,630 to the bid constituted a modification in breach of contract and violated § 18–8–307(2), C.R.S. (1978 Repl.Vol. 8) which prohibits a public servant from requiring a contractor to deal with a particular subcontractor. We disagree.

■ It is within the discretion of the District to accept or reject any or all bids submitted once they have been opened. Section 18–8–307, C.R.S. (1978 Repl.Vol. 8). Absent allegations of fraud or collusion, we will not interfere with the District's action. *See McNichols v. City & County of Denver,* 130 Colo. 202, 274 P.2d 317 (1954).

■ Nor can we conclude, as Heritage argues, that the District forced the contractors to select Paddock Pools in violation of § 18–8–307, C.R.S. (1978 Repl.Vol. 8).

Section 18–8–307, C.R.S. (1978 Repl.Vol. 8) provides:

"(1) No public servant shall require or direct a bidder or contractor to deal with a particular person in procuring any goods or service required in submitting a bid to or fulfilling a contract with any government.

. . . .

(3) It shall be an affirmative defense that the defendant was a public servant acting within the scope of his authority exercising the right to reject any material, subcontractor, service, bond, or contract tendered by a bidder or contractor because it does not meet bona fide specifications or requirements relating to quality, availability, form, experience, or financial responsibility."

Here, the district called in each of the four low bidding general contractors separately and asked if it would have any problem in working with a subcontractor other than Heritage if the District decided to select another subcontractor with greater experience. Each agreed it could work with one of the other subcontractors. Paddock Pools happened to be the next lowest priced subcontractor to Heritage. Hence, the District did not require that the general contractors accept a particular subcontractor, nor did the District require the general contractors to absorb any additional cost because the District preferred a different subcontractor. This type of negotiation and modification does not constitute a designation of supplier to fulfill a government contract, but rather is an exercise of the District's discretion in rejecting a particular subcontractor on the basis of experience. Section 18–8–307(3), C.R.S. (1978 Repl.Vol. 8).

## III.

■ Heritage also contends that it was entitled to the swimming pool subcontract under a theory of promissory estoppel. Again, we disagree.

Since, as previously discussed, the District made no promise to Heritage that it

would be selected as subcontractor, no implied contract arose.

We do not accept Heritage's argument that all of the general contractor bids which listed Heritage as the swimming pool subcontractor must be rejected and that the whole bidding process should be resumed. Such action would cause unnecessary time delays and expense to the District and bidders, and inasmuch as we have determined it is within the District's discretion to reject any and all bids, or portions of such bids, this requirement would be counterproductive.

Heritage is in no better position than any of the other unsuccessful applicants for the swimming pool subcontract. That it was a prequalified subcontractor and was selected by all of the general contractors on a preliminary basis does not give it any rights superior to those of the other swimming pool subcontractors.

Judgment affirmed.

PIERCE and BABCOCK, JJ., concur.